# IN THE UNTED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| KCI Holding USA Inc., <br> 4401 Gateway Boulevard <br> Springfield, Ohio 45502 | : <br> : <br> : <br> : | Case No.: 3:22-cv-108 <br><br> Judge |
| Plaintiff, | : <br> : | |
| vs. | : <br> : <br> : | **COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENT MISREPRESENTATION,** |
| Atlantic Specialty Insurance Company, <br> 605 Highway 169 North Suite 800 <br> Plymouth, Minnesota 55441 | : <br> : <br> : <br> : | **PROFESSIONAL NEGIGENCE, AND BREACH OF FIDUCUARY DUTY** <br><br> **(JURY DEMAND ENDORSED HEREON)** |
| And | : <br> : | |
| UBF Consulting, Inc. <br> 2033 North Main Street, Suite 700 <br> Walnut Creek, California 94596 | : <br> : <br> : <br> : | |
| Defendants. | : | |

Plaintiff KCI Holding USA Inc. ("KCI"), for its Complaint against Defendants Atlantic Specialty Insurance Company ("Atlantic Specialty") and UBF Consulting, Inc. ("UBF") hereby alleges as follows:

## PARTIES

1. KCI is a Delaware corporation with its principal place of business located in Springfield, Ohio.

2. Upon information and belief, Atlantic Specialty is a New York for-profit insurance corporation licensed to conduct business in Ohio and insure persons, property, or risk located in Ohio, with its headquarters located Plymouth, Minnesota.

3. Upon information and belief, UBF is a California corporation with its principal place of business in Walnut Creek, California.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a), because there is complete diversity of citizenship between the plaintiff and defendants and because the amount in controversy exceeds $75,000 exclusive of interest and costs.

5. This Court has personal jurisdiction over Atlantic Specialty because Atlantic Specialty conducts substantial business within the State of Ohio, is licensed to conduct the business of insurance in Ohio and contracted to insure a person, property or risk located in Ohio, namely, KCI.

6. This Court has personal jurisdiction over UBF because UBF conducts substantial business within the State of Ohio and performed the services giving rise to the allegations herein in the State of Ohio and this District and/or directed those services to KCI by acting as KCI's insurance broker in the State of Ohio and this District. Upon information and belief, UBF is licensed to conduct insurance services in the State of Ohio under the name UBF Insurance Services, Inc.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial number of the events or omissions giving rise to the claims asserted herein occurred in Springfield, Ohio, which is within this Court's jurisdiction.

## BACKGROUND FACTS

8. This case arises from Atlantic Specialty's improper termination of a stop-loss insurance policy issued to KCI by Atlantic Specialty.

9. KCI is a manufacturer of and provides services with respect to overhead cranes and related equipment to various industries. KCI sponsors and maintains a self-insured group health care plan (hereinafter, the "KCI Health Plan" or the "Plan") under which KCI provides health care benefits to its and its subsidiaries' employees. Like many self-insured employers, however, KCI purchased stop-loss insurance coverage to reimburse KCI for health care claims that exceeded a specified claim amount. This stop-loss insurance coverage is provided to KCI, as the employer, to protect KCI from unpredicted or catastrophic health care claims that may arise under the KCI Health Plan.

10. Although KCI is a sophisticated entity and well-respected in its own field of expertise, KCI is not an insurance company or insurance broker, and therefore relies upon the knowledge and expertise of others, including Atlantic Specialty and UBF when purchasing insurance.

11. Around early 2020, KCI began working with UBF as its broker and consultant. UBF held itself out as a sophisticated and knowledgeable broker and consulting firm that KCI could rely upon when applying for and purchasing insurance. At all relevant times, both KCI and UBF understood that KCI would rely upon UBF's knowledge, expertise, and advice during the insurance procurement process.

12. Specific to the allegations herein, at all times relevant hereto, KCI engaged and relied upon UBF to design, place, and broker its stop-loss insurance and advise it during the procurement process with which UBF professed to have special knowledge, experience, and expertise as an insurance broker and consulting firm.

13. During the time that UBF acted in this capacity for KCI, the parties mutually understood that KCI had placed special trust and confidence in UBF.

14. KCI reasonably relied upon the experience, expertise, and advice of UBF during the insurance application and procurement processes described herein.

15. In the spring of 2020, UBF, acting as KCI's broker, solicited a quote from Atlantic Specialty for stop-loss insurance coverage to commence January 1, 2021. During a lengthy underwriting process, occurring over a period of approximately four months, UBF, on behalf of KCI, provided Atlantic Specialty with substantial information concerning the KCI Health Plan and its historical claims experience and history. As is typical during this process, Atlantic Specialty was provided with detailed information concerning specific claimants and prospective large claims.

16. On numerous occasions, Atlantic Specialty asked for more information regarding particular claims and Plan claimants, which was provided to Atlantic Specialty. At the conclusion of these discussions, in September 2020, Atlantic Specialty provided UBF with a Policyholder Disclosure Statement to be executed by KCI before a formal quote for the stop-loss insurance policy could be issued.

17. Upon receipt of the Policyholder Disclosure Statement, UBF provided it to KCI for execution. In doing so, UBF specifically advised KCI that the Policyholder Disclosure Statement was simply a standard form document and that KCI has already provided Atlantic Specialty with all information that would otherwise need to be included in the Policyholder Disclosure Statement. As such, UBF told KCI: "Note, because KCI has already provided multiple reports to [Atlantic Specialty], you can just list 'Refer to previously provided list' in the disclosure and sign [it]."

18. In reliance upon the above-referenced statements by UBF, KCI executed the Policyholder Disclosure Statement on September 24, 2020, indicating that, with the exception of a new cancer diagnosis that had recently been received by the KCI Health Plan, all other relevant

information had been disclosed during the lengthy underwriting process. Apparently satisfied with the information that it received, Atlantic Specialty issued a formal quote for stop-loss coverage on September 28, 2020. The Atlantic Specialty stop-loss insurance policy was then issued to KCI with a policy period of January 1, 2021 to December 31, 2021 (the "Policy"). As discussed herein, the Policy provided coverage to KCI for all health care claims that were incurred between October 1, 2020 and December 31, 2021 and that exceeded the specific stop-loss deductibles set forth in the policy.

19. On February 11, 2021, KCI submitted a claim notification to Atlantic Specialty regarding a particular claimant covered under the KCI Health Plan whose medical expenses were expected to exceed the specific stop-loss deductible as set forth under the Policy (hereinafter, to protect confidential health information, the "Disputed Claimant"). Importantly, information regarding the Disputed Claimant had been disclosed by KCI, through its broker UBF, to Atlantic Specialty during the underwriting process.

20. Nonetheless, on June 3, 2021, without any prior notice, discussion or inquiry by Atlantic Specialty regarding the Disputed Claimant's claim, Atlantic Specialty issued a notice to KCI purporting to terminate all coverage under the Policy, retroactively and effective sixty days after Policy inception—March 2, 2021. As grounds, Atlantic Specialty contended that KCI had failed to disclose information regarding the Disputed Claimant on the Policyholder Disclosure Statement.

21. KCI and UBF responded to Atlantic Specialty promptly, explaining why the termination of the Policy was improper and would constitute a breach of the Policy on the part of Atlantic Specialty. Atlantic Specialty, however, refused to withdraw its termination. KCI was therefore forced to obtain replacement stop-loss insurance coverage on an expedited basis at

substantially less favorable terms and at a higher premium rate than the coverage it had purchased from Atlantic Specialty. This replacement coverage commenced on July 1, 2021.

22. Atlantic Specialty's wrongful termination of the Policy caused KCI to incur substantial damages, including but not limited to the following: (i) costs incurred by the Disputed Claimant which should have been covered by the Policy; (ii) costs incurred by other Plan claimants between the March 2, 2021 date of Policy termination and the inception of KCI's replacement coverage on July 1, 2021 which should have been covered by Policy; (iii) costs incurred by other Plan claimants between July 1, 2021 and December 31, 2021 that never exceeded the specific stop-loss deductibles of the replacement stop-loss insurance policy solely because the deductibles had been "re-set" to zero as of July 1, 2021 but which would have been paid by the Policy had the Policy not been wrongfully terminated; (iv) additional premium charges; (v) premium paid to Atlantic Specialty; and (vi) attorneys' fees and interest.

*The Insurance Policy*

23. Atlantic Specialty issued KCI the Policy. Atlantic Specialty already has a copy of the Policy and it contains confidential information of Plan participants; therefore, it is not attached hereto but can be made available upon request. KCI's application and the Policyholder Disclosure Statement are expressly incorporated by reference into the Policy contract.

24. The Policy requires that Atlantic Specialty reimburse KCI for **Eligible Claim Expenses**[1] that exceed the **Specific Deductible** for **Covered Persons**.

25. Generally, **Eligible Claim Expenses** are defined as those expenses that are incurred between October 1, 2020 and December 31, 2021 and that otherwise satisfy the definition of **Eligible Claim Expenses** set-forth in the Policy.

---

[1] Terms in bold typeface are defined in the Policy.

6

26. The **Specific Deductible** is defined as $225,000 per claimant, unless a particular participant covered under the KCI Health Plan is otherwise noted in the Policy as being subject to a higher deductible amount.

27. **Covered Persons** include all persons eligible for benefits under KCI Health Plan.

28. The Policy permits Atlantic Specialty to terminate the Policy only under certain specified circumstances. For example, the Policy permits Atlantic Specialty to terminate the Policy with thirty-one days advance written notice under certain conditions, such as KCI's "fail[ure] to perform any of [its] duties or obligations" under the Policy.

29. The Policy further states that the Policy will "automatically terminate" upon the earliest of the following:

   1. the date **Your Plan** terminates;
   2. the date a premium payment is due if such premium is not paid by the end of the grace period;
   3. the date **You** have failed to provide funds for payment of claims under **Your Plan**;
   4. the date of delegation by **You** of **Your** duties under this **Policy** to a **Third Party Administrator** whose delegation has not been approved by **Us** in writing; or
   5. sixty (60) days after the Effective Date if **You** have failed to furnish **Us** with any information or materials requested by **Us.** Such information or materials must be of reasonable nature to allow **Us** to determine **Our** liability under this **Policy**.

30. Nothing in the Policy provides that it will automatically terminate as a result of a failure to disclose information on the Policyholder Disclosure Statement. Rather, the Policyholder

Disclosure Statement itself, which is expressly incorporated into the Policy, states: "If the **Policyholder** fails to disclose any risks known to fall into one of the above categories, either intentionally or because a thorough review of all available records was not conducted, **ASIC** will have no liability *for claims on the risk that are not disclosed*." (emphasis in italics added).

31. Although KCI disputes any assertion that it did not provide Atlantic Specialty with requested information, even if certain requested information was not submitted there still needs to be evidence of intentional misconduct or lack of diligence on the part of the applicant before Atlantic Specialty is discharged from liability under the Policy. Atlantic Specialty did not provide such evidence either prior to or following its termination of the Policy and no such evidence exists. Because no evidence of intentional misconduct or lack of diligence on the part of the applicant (KCI) exists, the sole purported act or omission upon which Atlantic Specialty relied in its termination of the Policy was, at most, an unintentional omission by KCI.

32. Further, notably absent from the above-quoted provision is any disclosure or notification to the applicant (KCI) that an unintentional omission from the Policyholder Disclosure Statement will result in a complete termination of the Policy after issuance and a forfeiture of the premium(s) paid on the Policy. Additionally, neither Atlantic Specialty nor UBF ever advised KCI that an unintentional failure to disclose information on the Policyholder Disclosure Statement would result in a complete termination of KCI's coverage.

33. Atlantic Specialty's termination correspondence relied exclusively upon subpart (5) of the Automatic Termination provision found in Section VI of the Policy. By its terms, this provision does not apply to information disclosed in the Policyholder Disclosure Statement, which was executed prior to issuance of the Policy and is not related to any determination of Atlantic Specialty's "liability" for any particular claim under the Policy. Rather, subpart (5) expressly

applies solely to information requested by Atlantic Specialty "to determine [its] liability under" the Policy—not to make a decision as to whether it would issue the Policy in the first instance.

## COUNT ONE
### *Breach of Contract (KCI v. Atlantic Specialty)*

34. KCI incorporates the statements and averments contained in the above paragraphs as if rewritten here.

35. KCI, through UBF, provided Atlantic Specialty with the information requested by Atlantic Specialty during its underwriting process for the Policy.

36. The Disputed Claimant was also identified as a potentially large claim during the underwriting process. All information available to KCI at the time of policy application was provided to Atlantic Specialty concerning the Dispute Claimant during that process. To the extent Atlantic Specialty required additional information regarding disclosed claimants, including the Disputed Claimant, it had the opportunity and ability to inquire with KCI or UBF.

37. Moreover, even if it were the case that this information had not been conveyed to Atlantic Specialty during underwriting, the Policy does not automatically terminate as a result of a failure to disclose information on the Policyholder Disclosure Statement. At most, and the only remedy that was disclosed to KCI at the time of the Policy application, was that Atlantic Specialty would disclaim coverage for any particular undisclosed claimant.

38. Thus, Atlantic Specialty's termination of the Policy, effective March 2, 2021, was improper, and constitutes of breach of the Policy contract.

39. Atlantic Specialty has further breached its contractual obligations by refusing to reimburse KCI for claims for **Eligible Claim Expenses** that exceed the **Specific Deductible** for **Covered Persons**, as required by the Policy.

40. Prior to its wrongful termination by Atlantic Specialty, KCI complied with all applicable conditions or other requirements of the Policy, including requirements for the payment of premium, notice, claim reporting, and cooperation.

41. As a direct and proximate result of Atlantic Specialty's breach of contract, KCI has been damaged, and likewise will continue being damaged by incurring substantial legal fees and with respect to future claims for which Atlantic Specialty has indemnity obligations, in an amount in excess of $75,000, the exact amount of which is currently uncertain but shall be established at trial.

## COUNT TWO
*Declaratory Judgment (KCI v. Atlantic Specialty)*

42. KCI incorporates the statements and averments contained in the above paragraphs as if rewritten here.

43. An actual case or controversy exists as to an insurance policy issued to a policyholder in this judicial district, sufficient to permit a declaratory judgment under 28 U.S.C. § 2201.

44. Under the terms of the Policy, Atlantic Specialty must reimburse KCI for claims for **Eligible Claim Expenses** that exceed the **Specific Deductible** for **Covered Persons**.

45. An actual and justiciable controversy exists between KCI and Atlantic Specialty with respect to Atlantic Specialty's obligations under the Policy relating to certain claims. Specifically, Atlantic Specialty contends that a certain KCI employee ("Employee") was not a **Covered Person** under the Policy, and further contends that its obligation to reimburse KCI for the claims of other **Covered Persons** ("Covered Persons") are limited by an exclusion within the Policy.

46. An actual and justiciable controversy also exists between KCI and Atlantic Specialty with respect to Atlantic Specialty's obligations to reimburse KCI for future claims, yet unknown, that constitute **Eligible Claim Expenses** incurred between October 1, 2020 and December 31, 2021.

47. Atlantic Specialty has refused to recognize or honor its contractual obligations to KCI on the terms set forth in the Policy.

48. The issuance of declaratory relief by this Court will resolve the existing controversy between KCI and Atlantic Specialty as to the meaning and terms of the Policy.

49. KCI is entitled to a declaration by this Court of its rights and Atlantic Specialty's obligations under the Policy relating to the losses described herein.

## COUNT THREE
*Professional Negligence (KCI v. UBF)*

50. KCI incorporates the statements and averments contained in the above paragraphs as if rewritten here.

51. As broker and consultant for KCI, UBF owed KCI certain responsibilities, duties, and obligations, including the duty to exercise reasonable care and diligence in the provision of such services for KCI.

52. Among the responsibilities, duties, and obligations owed by UBF was to exercise due care and skill in advising KCI regarding the application and procurement process with Atlantic Specialty, including the completion of the Policyholder Disclosure Statement discussed above.

53. In the event it is ultimately determined that Atlantic Specialty properly terminated the Policy, which KCI expressly disputes, then such termination was the direct and proximate result of UBF's failure to fulfill its professional duties and obligations to KCI with regard to the policy application process and the completion of the Policyholder Disclosure Statement resulting

in damages to KCI in an amount to be proven at trial, but believed to be in excess of $75,000 exclusive of interest and costs.

## COUNT FOUR
### *Negligent Misrepresentation (KCI v. UBF)*

54. KCI incorporates the statements and averments contained in the above paragraphs as if rewritten here.

55. During all times relevant hereto, UBF held itself out as an expert in the profession of procurement and assessment of insurance products, including the procurement of stop-loss insurance coverage for businesses such as KCI. UBF made these representations in both its marketing materials and in conversations with KCI and/or its employees, agents, or representatives.

56. UBF, in the course of its business, supplied information and advice to KCI concerning the application for and the procurement of stop-loss insurance coverage for KCI. This information included advising KCI on the completion of critical forms such as the Policyholder Disclosure Statement discussed herein. UBF knew that KCI was relying upon this advice and information in applying for stop-loss insurance coverage and intended for KCI to rely upon its professional advice and direction in this regard.

57. In the event it is ultimately determined that Atlantic Specialty properly terminated the Policy, which is expressly disputed by KCI, then such termination was the direct and proximate result of material misrepresentations, promises, and guarantees by UBF regarding the information KCI was required to provide Atlantic Specialty during the application process. Among those misrepresentations, promises, and guarantees were that KCI has properly supplied all necessary information to Atlantic Specialty and that KCI has properly completed the Policyholder Disclosure Statement.

58. KCI reasonably relied upon the statements, representations, promises and guarantees discussed above in applying for and procuring stop-loss insurance coverage from Atlantic Specialty.

59. In the event it is ultimately determined that Atlantic Specialty properly terminated the Policy, which is expressly disputed by KCI, then UBF failed to exercise reasonable care, competence, and diligence in making the statements, representations, promises and guarantees discussed herein during the insurance application and procurement process.

60. In the event it is ultimately determined that Atlantic Specialty properly terminated the Policy as a result of UBF's negligent misrepresentations, such termination has caused UBF to incur damages in an amount to be proven at trial but believed to be in excess of $75,000 exclusive of interest and costs.

## COUNT FIVE
*Breach of Fiduciary Duty (KCI v. UBF)*

61. KCI incorporates the statements and averments contained in the above paragraphs as if rewritten here.

62. UBF held itself out as an expert in the process of procuring the necessary stop-loss insurance coverage for entities like KCI.

63. UBF was aware of KCI's claims history and the information assembled and provided to Atlantic Specialty during the application and procurement process. UBF was also acutely aware of the potential ramifications if incomplete or inaccurate information was provided to an insurer during the application and procurement process.

64. UBF was also aware that KCI placed a special trust and confidence in UBF. UBF had regular meetings with KCI and/or its representatives in which UBF held itself out as having skill and experience in the procurement of stop-loss insurance for KCI and UBF knew or should

have reasonably known that KCI and/or its representatives was relying upon UBF's skill, experience, and advice to ensure that KCI was following the appropriate procedures in applying for and procuring stop-loss coverage. This includes, but is not limited to, completing the Policyholder Disclosure Statement discussed herein.

65. As a broker, agent, consultant, and producer for KCI in whom KCI placed its special trust and confidence, UBF owed KCI certain fiduciary duties and obligations.

66. UBF sought and accepted this special trust and confident from KCI by holding itself out as an expert in the services and advice discussed herein.

67. In the event it is ultimately determined that Atlantic Specialty properly terminated the Policy, which KCI expressly disputes, then such termination was the direct and proximate result of UBF's breach(es) of its fiduciary duties to KCI by failing to properly advise KCI during the insurance application and procurement process.

68. In the event it is ultimately determined that Atlantic Specialty properly terminated the Policy, then KCI has been damaged by UBF's breach of its fiduciary duties owed to KCI in an amount to be proven at trial, but believed to be in excess of $75,000 exclusive of interest and costs.

**WHEREFORE**, KCI prays that judgment be entered against Atlantic Specialty as follows:

(a) As to Count One, damages against Atlantic Specialty in excess of seventy-five thousand dollars ($75,000.00);

(b) As to Count Two, a declaration that Atlantic Specialty, under the terms of the Policy, is obligated to fully reimburse KCI for the claims of Employee and the Covered Persons;

(c) As to Count Two, a declaration that Atlantic Specialty, under the terms of the Policy, is obligated to reimburse KCI for future claims, yet unknown, that constitute Eligible Claim Expenses incurred between October 1, 2020 and December 31, 2021;

(d) As to Count Three, and to the extent KCI is not provided full and complete relief under Counts One and Two, damages against UBF in excess of seventy-five thousand dollars ($75,000);

(e) As to Count Four, and to the extent KCI is not provided full and complete relief under Counts One and Two, damages against UBF in excess of seventy-five thousand dollars ($75,000);

(f) As to Count Five, and to the extent KCI is not provided full and complete relief under Counts One and Two, damages against UBF in excess of seventy-five thousand dollars ($75,000);

(g) Prejudgment interest, costs, and attorneys' fees in amounts to be proven at trial; and

(h) All other relief as this Court may deem just, proper, equitable, and appropriate in KCI's favor.

Respectfully submitted,

**BROUSE MCDOWELL**

*/s/ Amanda M. Leffler*
Amanda M. Leffler (OH: 0075467)
aleffler@brouse.com
P. Wesley Lambert (OH: 0076961)
wlambert@brouse.com
388 South Main Street, Suite 500
Akron, Ohio 44311
(330) 535-5711 – telephone
(330) 253-8601 – facsimile

*Attorneys for Plaintiff KCI Holding USA, Inc.*

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, Plaintiff KCI Holding USA, Inc. hereby demands a trial by jury on all issues in this action so triable by the maximum amount of jurors authorized by law.

*/s/ Amanda M. Leffler*
Amanda M. Leffler (OH: 0075467)
